COMMONWEALTH vs. DOUGLAS D. CHAPPEE.

Middlesex. February 4, 1986. — May 12, 1986.

Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Controlled Substances. Search and Seizure*, Expectation of privacy. *Evidence*, Expert opinion, Judicial discretion. *Practice, Criminal*, Disclosure of defense witnesses, Judicial discretion, Required finding, Presumptions and burden of proof, Indictment, Duplicitous convictions. *Constitutional Law*, Assistance of counsel. *Due Process of Law*, Vagueness of statute. *Words*, "Trafficks."

At a hearing on a motion by a criminal defendant to suppress evidence seized from his home pursuant to a warrant issued on the basis of an affidavit containing information which had been obtained by the police from trash bags discarded as waste on a town-owned strip of land in front of the driveway of the defendant's premises, the judge did not err in concluding that the defendant did not have a justifiable expectation of privacy in the trash bags and that therefore the "search" of the bags, as well as the search of the defendant's home, did not violate the defendant's rights under the Fourth Amendment to the Federal Constitution. [512-513]

At the trial of a criminal case, the judge neither abused his discretion, nor violated the defendant's Federal and State constitutional right to present a defense, by precluding scientifically sophisticated testimony by the defendant's expert witnesses whose names had not been disclosed to the prosecution as required by a pretrial agreement, where the judge was warranted in finding that the prosecutor was surprised by defense counsel's mid-trial announcement that he would call the witnesses, that the surprise was unfairly prejudicial to the Commonwealth, and that the defendant had deliberately and in bad faith created the situation; nor, in the circumstances, did the judge abuse his discretion or violate the defendant's constitutional rights by refusing to accept the defendant's suggestions of alternative sanctions. [516-519]

At the jury-waived trial of indictments for trafficking in cocaine, G. L. c. 94C, § 32E (b) (2), and for possession of cocaine with intent to distribute, the Commonwealth presented sufficient evidence to enable the judge to conclude beyond a reasonable doubt that white powder seized by the police from the defendant's home was either a derivative of coca leaves or was chemically equivalent thereto, so as to be a controlled substance as defined in G. L. c. 94C, § 31 (Class B [a] [4]). [519-521]

There was no merit to a criminal defendant's contentions that use of the word "trafficks" in G. L. c. 94C, § 32E (b) (2), made the statute unconstitutionally vague; that an indictment charging the defendant with trafficking in cocaine under § 32E (b) (2) was defective because of its failure to include an allegation of "continuity of action or organizational structure," where the word "trafficks" in § 32E (b) (2) simply characterizes the prohibited conduct; or that the defendant was entitled as matter of law to a required finding of not guilty on the trafficking offense based on his claim that a finding of continuity of action or organizational structure was not warranted on the evidence in the case. [521-522]

A defendant was not denied the effective assistance of counsel by reason of his attorney's failure to provide the Commonwealth with notice of his intention to call expert witnesses, who were, as a consequence, precluded from testifying, where the defendant did not show that, had prior notice been given, he would have had a substantial defense of which he was deprived, and where the judge found on adequate evidence that counsel's decision to conceal the existence of his expert witnesses was a calculated tactic; nor was he denied the effective assistance of counsel by reason of his in-State counsel's failure to move for admission pro hac vice of his out-of-State co-counsel, who was consequently barred at mid-trial from further addressing the court, where nothing in the record suggested that the in-State attorney did not adequately represent the defendant during the remainder of the trial. [523]

On appeal from the defendant's conviction on an indictment charging trafficking in cocaine, this court chose to consider the defendant's conviction on a second indictment charging possession of cocaine with intent to distribute, which had been placed on file with the defendant's consent, and ordered that, since possession with intent to distribute is a lesser included offense of trafficking, the second indictment be dismissed. [523-524]

INDICTMENTS found and returned in the Superior Court Department on August 3, 1983.

A motion to suppress evidence was heard by *John J. Irwin, Jr.*, J., and the cases were heard by *Alan J. Dimond*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kimberly Homan* for the defendant.

*Max W. Beck*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. After a jury-waived trial, the defendant was found guilty of trafficking in cocaine, G. L. c. 94C, § 32E

(b) (2) (1984 ed.), and possession of cocaine with intent to distribute. G. L. c. 94C, § 32A (a) (1984 ed.). The judge sentenced the defendant to from five to ten years at the Massachusetts Correctional Institution, Cedar Junction, imposed a fine of $15,000 on the trafficking conviction and, with the defendant's assent, ordered the indictment for possession with intent to distribute filed. The defendant appealed and we transferred the case to this court on our own motion.

The defendant challenges his convictions on the following grounds: (1) The denial of his pretrial motion to suppress was error. (2) The judge erroneously precluded his expert witnesses from testifying. (3) The evidence at trial was insufficient to warrant a finding beyond a reasonable doubt that the substance in which he allegedly trafficked was a controlled substance and therefore the judge erred in denying the defendant's motion for required findings of not guilty. (4) "Trafficking" is an essential element of the crime described in G. L. c. 94C, § 32E (b) (2), and trafficking was neither clearly alleged in the indictment nor proved at trial. (5) The defendant was denied the effective assistance of counsel. (6) The convictions under both G. L. c. 94C, §§ 32A (a) and 32E (b) (2), are duplicitous. We reject all the defendant's arguments pertaining to the trafficking indictment and affirm that conviction. In the circumstances, we remand this case to the Superior Court for an order dismissing the indictment for the lesser included offense of possession with intent to distribute, even though that indictment had been filed with the defendant's consent.

Before trial, the defendant moved to suppress the physical evidence seized from his home pursuant to a warrant issued on the basis of an affidavit executed by Trooper John B. O'Connor of the State police. The only ground set forth in the motion on which the defendant relies on appeal is that it is apparent from the affidavit itself that the information in the affidavit that was critical to the issuance of the search warrant was unlawfully obtained. The defendant argues that any evidence traceable to unlawfully obtained information must be suppressed. See *Commonwealth* v. *D'Onofrio*, 396 Mass. 711, 713 (1986).

The affidavit contained the following information. In June, 1983, Trooper O'Connor and Detective Edward Hayes of the North Reading police department initiated a narcotics investigation in North Reading. An undisclosed informant told them that the defendant was a dealer of large quantities of cocaine in the area. As a part of the investigation, the informant met with the defendant and received from him a small quantity of cocaine as a sample of a substance available for future purchase. The substance was delivered to the police, was analyzed, and was determined to be forty per cent pure cocaine.

According to the affidavit, on Tuesday morning, July 19, 1983, Trooper O'Connor observed the placing of three trash bags on the edge of the macadam on Kingston Street in front of the driveway of the defendant's premises. The officer had previously learned that the strip of land on which the trash bags were placed was owned by the town. Trooper O'Connor seized the bags without a warrant, searched them, and found the following: a letter addressed to the defendant; seven plastic "baggies" containing a white, powdery substance, later determined to be eighty per cent pure cocaine; one hypodermic needle and syringe; and a quantity of marihuana.

On the basis of that affidavit, Trooper O'Connor procured a warrant to search the defendant's home for controlled substances and other materials relating to the possession and distribution of controlled substances. The judge who heard the motion to suppress found that, in the search conducted pursuant to the warrant, police officers discovered and seized 139.4 grams of a white, powdery substance, later analyzed and found to be seventy-two per cent pure cocaine, ledger paper containing notations apparently referring to drug transactions, three bottles of Inositol, a plastic bag containing two spoons, and a bag containing plastic bags wrapped in newspaper. After seizing the items, the officers arrested the defendant. The judge also found that the trash bags that furnished the information on which the search warrant was based had been placed on town property. He concluded that the defendant did not have a justifiable expectation of privacy in the trash bags and that

therefore the "search" of the bags did not violate the defendant's Fourth Amendment rights.[1] He denied the motion to suppress.

Unless the defendant had a reasonable expectation of privacy in the trash bags when the officers opened them and observed their contents, there was no "search" within the meaning of the Fourth Amendment. *Commonwealth* v. *D'Onofrio, supra* at 714. The burden of proof is on the defendant. *Id.* at 715. The "correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Id.* at 718, quoting *Oliver* v. *United States*, 466 U.S. 170, 182-183 (1984). The judge made no finding with respect to whether the defendant in fact had an expectation of privacy in the trash bags, but he concluded that any such expectancy would not be reasonable. The judge's conclusion is subject to our review. *Commonwealth* v. *Cadoret*, 388 Mass. 148, 150 (1983).

There is authority for holding that the defendant had a reasonable expectation of privacy in the trash bags, and that opening and searching them violated his Fourth Amendment rights. See *People* v. *Krivda*, 5 Cal. 3d 357, 365 (1971), vacated, 409 U.S. 33 (1972), aff'd, 8 Cal. 3d 623, cert. denied, 412 U.S. 919 (1973). However, the overwhelming majority of courts that have considered the issue support the conclusion that any expectation of privacy that the defendant might have had was not reasonable. See, e.g., *United States* v. *Michaels*, 726 F.2d 1307, 1312-1313 (8th Cir.), cert. denied, 469 U.S. 820 (1984), and cases cited; *United States* v. *Kramer*, 711 F.2d 789, 793 (7th Cir.), cert. denied, 464 U.S. 962 (1983); *United States* v. *Terry*, 702 F.2d 299, 309 (2d Cir.), cert. denied sub nom. *Williams* v. *United States*, 461 U.S. 931 (1983); *Smith* v. *State*, 510 P.2d 793, 797-798 (Alaska 1973); *State* v. *Fassler*, 108 Ariz. 586, 592-593 (1972). Although the fact that the trash bags were placed on public property may not be controlling, it is a significant factor to be considered in determining whether the defendant had a reasonable expectation of privacy.

---

[1] The defendant does not argue that his rights under art. 14 of the Declaration of Rights of the Massachusetts Constitution are different from his rights under the Fourth Amendment to the United States Constitution.

*Commonwealth* v. *Cadoret, supra,* and cases cited. The defendant retained no control over other persons' access to his discarded waste and, in fact, his behavior demonstrated his intention to abandon that material to strangers. The motion to suppress was correctly denied.

We turn to the remaining issues on appeal, and we set forth the evidence at trial and certain events relevant thereto. A certificate of analysis concerning the 139.4 grams of white powder contained in the three plastic bags seized from the defendant's home, signed by Kenneth W. Gagnon, a chemist with the Department of Public Safety, was introduced in evidence. The certificate stated that the powder "was found to contain 72% cocaine, a derivative of coca leaves and a Class B Controlled Substance as defined under Chapter 94C, Section 31 of the General Laws." Gagnon testified for the Commonwealth. He stated his qualifications as a chemist and he confirmed that he had analyzed the substance taken from the defendant's home and had reduced his findings to writing pursuant to G. L. c. 147, § 4D (1984 ed.).

On cross-examination conducted by Mr. Theodore Simon representing the defendant, Gagnon testified concerning the tests that he conducted. He testified also that Cocaine L is an isomer contained in the coca leaf and its derivative,[2] and that Cocaine L is the optical isomer of Cocaine D. Gagnon agreed that he was "not sufficiently familiar to distinguish Cocaine L from Cocaine D." When asked, "[A]re you familiar that Cocaine D is synthetically produced," Gagnon responded, "I am familiar that it is potentially possible to produce it, yes." He also gave testimony concerning his awareness of a "potential for there being six other" isomers of cocaine. Gagnon refused to agree that "it is only Cocaine L which is contained in the coca plant" but he did agree that Cocaine L "is much more pharmacologically active per amount than the D isomer." On

---

[2] Stedman's *Medical Dictionary* 730 (5th law. ed. 1982) defines "isomer" as "One or more substances displaying isomerism," and "isomerism" as "The existence of a chemical compound in two or more forms that are identical with respect to percentage composition but differ as to the position of the atoms within the molecule, and also in physical and chemical properties."

redirect examination, Gagnon testified that the tests he per-
formed in this case are generally accepted in the scientific
community as appropriate ways to test for "cocaine," and on
recross-examination he said that within the scientific commu-
nity there is a division of opinion on whether those tests can
distinguish between Cocaine L and Cocaine D.

Called by the Commonwealth, Trooper John R. Sprague of
the State police testified to his extensive training and experience
as a narcotics investigator. According to his testimony, Trooper
Sprague participated in the search of the defendant's home and
he seized from the defendant's bedroom the white powder that
was the subject of the certificate of analysis signed by the
chemist Gagnon. The powder itself was admitted in evidence.
Trooper Sprague testified that he also seized from the defend-
ant's bedroom two bottles of "Inositol," which he explained
"is a substance consistent in appearance and in texture with
cocaine, [and is] frequently employed by a cocaine distributor
to adulterate his cocaine . . . to reduce it for subsequent sale."
He also described a newspaper packet covered with duct tape
and white tape, found in the defendant's bedroom, which, he
testified, is consistent with the packaging commonly employed
for the distribution of cocaine by the kilogram. In the officer's
opinion "based on the quantity of narcotics found at [the defend-
ant's] residence and of the relatively high percentage [of purity]
of his narcotics," the defendant was not an importer of cocaine
but he was one or two rungs below the importer on the ladder
of distribution. Lastly, the trooper testified that there were
several pieces of paper in a desk drawer in the defendant's
room which contained notations concerning the identity of the
defendant's customers and information about the quality, quan-
tity, and prices of cocaine sales to those customers. Trooper
Sprague stated that the prices were consistent with generally
accepted market prices for cocaine.

Near the end of Gagnon's testimony, the judge and counsel
engaged in a brief discussion about whether the defendant
would be permitted to call three expert witnesses to testify that
although Cocaine L, derived from the coca plant, is a controlled
substance, numerous other cocaine isomers are not controlled

substances. The witnesses also would have testified that the tests performed by Gagnon were inadequate to distinguish between Cocaine L and the other cocaine isomers. The prosecutor objected to the witnesses' being allowed to testify on the grounds that he had not been advised of the defendant's intention to call expert witnesses and that he had produced the chemist Gagnon "strictly as a courtesy to the defense." The judge referred to the pretrial conference report, particularly the paragraph entitled "[R]eciprocal discovery for the prosecution — Rule 14 (a) (3)," in which the defendant agreed that on or before October 21, 1983, he would provide the Commonwealth with the names and addresses of proposed witnesses. The judge announced that he was not disposed to allow any witnesses, "especially of an expert nature," to testify if the defendant had not given the Commonwealth their names. The judge made this comment: "In view of the obvious preparation that you've made for this cross-examination, Mr. Simon, it's perfectly obvious to me that this is the kind of subject matter of which you knew well in advance the technical issues that might come up and of your obligation under the pretrial conference report to file a notice of proposed expert testimony."

The Commonwealth rested its case at the conclusion of Trooper Sprague's testimony, and the subject of the defendant's expert witnesses arose again. Mr. Simon informed the judge that the witnesses he would call were present in the courtroom, and that one was from Michigan and the other two were from Philadelphia, Pennsylvania. He also told the judge that he had prepared a pretrial memorandum for submission to the judge dealing with the subject the experts' testimony would address. After hearing the prosecutor's argument in support of his objection to the witnesses' being permitted to testify, the judge spoke as follows: "I am going to exclude all of your expert testimony in this case, Mr. Simon and Mr. Chisholm [co-counsel for the defendant]. I find as a matter of fact that the defense has not acted in good faith; that it has deliberately withheld the names of these expert witnesses for the purpose of lulling the Commonwealth into security and . . . creating unfair prejudice to the disadvantage of the Commonwealth in this case. That is my finding, and that is my ruling."

Mr. Simon stated that the witnesses were in court to advise counsel, and that their testimony only was made necessary by inaccuracies in the testimony of Gagnon, the Commonwealth's chemist. The judge rejected that explanation. Mr. Simon then suggested as an alternative to the witnesses' being precluded from testifying that the prosecutor be granted a continuance and given an opportunity to interview the proposed witnesses. He also proposed that the prosecutor be allowed to call the Commonwealth's chemist back to the witness stand and that the prosecutor be given the opportunity to call other chemists. The prosecutor told the judge that many months earlier, in response to a request by Mr. Chisholm, he had advised him of the tests that the Commonwealth had performed. The prosecutor also told the judge that he felt that he had "been had." The judge agreed, and reiterated that the witnesses would not be permitted to testify. He characterized the defendant's tactics as "trial by ambush," which he would not permit.

The trial resumed the next morning. The judge asked Mr. Simon if he were a member of the Massachusetts Bar. The answer was "No, I'm not, sir." The judge asked Mr. Simon if he had been admitted to practice in this case, and after receiving Mr. Simon's answer that he had filed an appearance the day before, the judge advised him that he might not further address the court. The judge then accepted an offer of proof from Mr. Chisholm regarding what the three experts' testimony was expected to be. The judge permitted Mr. Chisholm to consult with Mr. Simon regarding the offer of proof.

After making the offer of proof, the defense rested, and then orally moved for a required finding of not guilty on each indictment based on the contention that the Commonwealth had failed to produce evidence sufficient to warrant a finding beyond a reasonable doubt that the 139.4 grams of powder were a controlled substance. The motions were denied and the judge found the defendant guilty on both indictments.

The defendant argues that by precluding his experts' testimony, the judge abused his discretion and violated the defendant's right to present a defense secured by art. 12 of the Declaration of Rights of the Massachusetts Constitution and by the

Sixth Amendment to the United States Constitution, applicable to the States through the due process clause of the Fourteenth Amendment. *Washington* v. *Texas*, 388 U.S. 14, 17-19 (1967).[3] Rule 11 (a) (1) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 862 (1979), requires a pretrial conference between counsel "to consider such matters as will promote a fair and expeditious disposition of the case." A conference report, signed by counsel, must be filed, and that "[a]greements reduced to writing in the conference report shall be binding on the parties and shall control the subsequent course of the proceeding." Mass. R. Crim. P. 11 (a) (2), 378 Mass. 862 (1979). Just as a judge has discretion in appropriate circumstances to "exclude evidence for noncompliance with a discovery order issued pursuant" to Mass. R. Crim. P. 14 (c) (2), 378 Mass. 874 (1979), a judge also should and does have similar discretion to enforce an agreement contained in a pretrial conference report. See *Commonwealth* v. *Scalley*, 17 Mass. App. Ct. 224, 230 n.8 (1983); *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. 398, 403 n.3 (1981). "[W]hen the government and a defendant enter into a pretrial agreement both parties are entitled to rely upon that agreement in preparing their respective cases," *United States* v. *Jackson*, 621 F.2d 216, 220 (5th Cir. 1980), and "they should ordinarily be expected to live by it." 2 C.A. Wright, Federal Practice and Procedure § 293, at 185 (1982).

Of course, the judge's discretion to impose sanctions for violation of a pretrial agreement is limited by the defendant's constitutional right to present evidence in his behalf. That right also is not absolute, however. *Commonwealth* v. *Blaikie*, 375 Mass. 601, 608 (1978). As we noted in *Commonwealth* v. *Edgerly*, 372 Mass. 337, 343 (1977), quoting *United States* v. *Nobles*, 422 U.S. 225, 241 (1975), "if supported by the 'legitimate demands of the adversarial system,' the sanction of preclusion of testimony offered on behalf of a defendant may not violate Sixth Amendment rights." Our task is to bal-

---

[3] The defendant does not argue that his rights under the State Constitution are greater than those secured by the Federal Constitution.

ance the Commonwealth's interest in enforcing its procedural rules against the defendant's constitutional right to present evidence in his behalf.

An important reason for notice rules is the prevention of surprise. "In addition to preventing surprise, other factors [which must be] considered before a witness preclusion sanction is employed to enforce discovery rules are: the effectiveness of less severe sanctions, the materiality of the testimony to the outcome of the case, prejudice to the other party caused by the testimony, and the evidence of bad faith in the violation of the discovery rules." *United States ex rel. Enoch* v. *Hartigan*, 768 F.2d 161, 163 (7th Cir. 1985). The judge was fully warranted in finding that the prosecutor was surprised by the defendant's mid-trial announcement that he would call three expert witnesses to challenge the Commonwealth's proof that the white powder seized from the defendant's home was a controlled substance. The judge's finding that the surprise was unfairly prejudicial to the Commonwealth was also well justified. In view of the scientific sophistication of the expected testimony of the witnesses, the prosecutor reasonably could not have been expected to conduct effective cross-examination or to have rebuttal evidence available. Furthermore, there was ample justification for the judge's conclusion that the defendant had deliberately and in bad faith planned to put the prosecutor precisely in that position. Together with the fact that the defendant's experts proposed only to challenge the efficacy of the Commonwealth's testing procedures, rather than to express their own opinion of the composition of the substance based on tests conducted by them, see *Commonwealth* v. *Blaikie, supra* at 610-611, the sanction imposed by the judge was appropriate.

Nor did the judge abuse his discretion or violate the defendant's constitutional rights by refusing to accept the defendant's suggestions of alternative sanctions. It seems highly unlikely that the interests of the Commonwealth would have received adequate protection by the prosecutor's being allowed to interview the witnesses before they testified. Furthermore, the defendant could not fairly demand that the completion of the trial

be delayed as long as might be necessary to permit the prosecutor to master adequately the subject to be addressed by the witnesses, to investigate the defendant's witnesses, and to obtain appropriate rebuttal evidence.

At the close of the evidence, the defendant moved for a required finding of not guilty on the ground that the evidence did not warrant a finding beyond a reasonable doubt that the white powder seized from his home was either a derivative of coca leaves or was chemically equivalent thereto, so as to be a controlled substance as defined in G. L. c. 94C, § 31 (Class B [a] [4]) (1984 ed.).[4] Unless the powder had been proved to be a controlled substance within that definition, the evidence would not warrant a conviction under G. L. c. 94C, § 32E (b) (2). We review the denial of a motion for a required finding of not guilty by considering "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the [fact finder] 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' " *Commonwealth* v. *Anderson*, 396 Mass. 306, 311 (1985), quoting *Commonwealth* v. *Clary*, 388 Mass. 583, 588 (1983). See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). We conclude that the Commonwealth presented sufficient evidence to warrant a finding that the substance was controlled cocaine.

---

[4] Under G. L. c. 94C, § 31, a Class B controlled substance is defined to include the following: "(4) Coca leaves and any salt, compound, or derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine."

Prior to October, 1984, Schedule II (a)(4) of 21 U.S.C. § 812(c) (1982), contained the same definition of controlled cocaine as G. L. c. 94C, § 31 (Class B [a] [4]). In response to assertion in the Federal courts of the sophisticated scientific defense raised in this case, grounded in the chemistry of cocaine, the so-called "cocaine isomer strategy," see *United States* v. *Ross*, 719 F.2d 615, 617 (2d Cir. 1983), Congress amended Schedule II (a)(4) to include the isomers of cocaine. Pub. L. 98-473, Title II, § 509 (b), 98 Stat. 2072 (1984).

Pursuant to G. L. c. 147, § 4D, the chemist Gagnon's certificate of analysis of the white powder seized from the defendant's home is "prima facie evidence" that the substance was 139.4 grams of "72% cocaine, a derivative of coca leaves and a Class B Controlled Substance as defined under Chapter 94C, Section 31 of the General Laws." In a civil case, prima facie evidence not only remains evidence throughout the trial and is to be weighed like any other evidence on relevant questions of fact, but until contrary evidence is introduced it has "an artificial legal force which compels the conclusion that the evidence is true." *Cook* v. *Farm Serv. Stores, Inc.*, 301 Mass. 564, 566 (1938). No such artificial compelling force is permissible in a criminal case, *Commonwealth* v. *Pauley*, 368 Mass. 286, 291-292 (1975), because such a presumption "would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime," *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 250 (1980), quoting *Sandstrom* v. *Montana*, 442 U.S. 510, 523 (1979), but the evidence remains evidence throughout the trial and is probative on issues to which it is relevant. As we noted in *Commonwealth* v. *Slavski*, 245 Mass. 405, 417 (1923), "[t]he admission in evidence of the record of . . . a fact made by a public officer pursuant to statutory obligation would be as likely to be accurate as many of the public records which have been held to be admissible." The certificate of the Commonwealth's chemist, therefore, constituted some evidence that the material in question was a controlled substance and did not cease to be evidence because the chemist's testimony on cross-examination could be viewed as leaving open the possibility that the white powder was a synthetic form of cocaine, which is not chemically equivalent to cocaine derived from coca leaves.

The fact that the certificate remains as evidence does not require the conclusion that the judge was warranted in finding beyond a reasonable doubt that the white powder was a controlled substance. See *Commonwealth* v. *Latimore, supra*. Although the certificate continued to have probative effect, its persuasiveness was weakened by the testimony of Gagnon

given on cross-examination. We need not decide, however, whether the certificate in conjunction with Gagnon's testimony, without more, warranted the judge's finding, because that evidence was augmented sufficiently, we conclude, by the testimony of Trooper Sprague concerning the items found in the defendant's bedroom indicating illicit drug dealing. The Inositol, customarily used to "cut" controlled cocaine for sale, as well as the packaging materials and the notations on the ledger pages lend sufficient support to the certificate "to bring minds of ordinary intelligence and sagacity to the persuasion" that the Commonwealth has established beyond a reasonable doubt that the substance was controlled cocaine. *Commonwealth* v. *Souza, ante* 236, 238 (1986). *Commonwealth* v. *Casale*, 381 Mass. 167, 168 (1980).

General Laws c. 94C, § 32E (*b*) (2), provides as follows: "Any person who traffics in cocaine or any salt thereof by knowingly or intentionally manufacturing, distributing, or dispensing or possessing with intent to manufacture, distribute, or dispense or by bringing into the commonwealth a net weight of twenty-eight grams or more of cocaine or any salt thereof or a net weight of twenty-eight grams or more of any mixture containing cocaine or any salt thereof shall, if the net weight of cocaine or any salt thereof or any mixture thereof is: . . . (2) One hundred grams or more, but less than two hundred grams, be punished . . . ." The defendant argues that "trafficking" is something more than knowingly or intentionally manufacturing, distributing, or dispensing or possessing with intent to manufacture, distribute, or dispense or bringing into the Commonwealth cocaine in the stated amounts. He argues that trafficking is an element of the statutory offense which is distinct from the specified conduct. He then argues that because the word "trafficks" is not defined in the statute, the statute is unconstitutionally vague. Lastly, he argues that if the word "trafficks" is susceptible to any construction, it would be construed most reasonably as meaning "a series of prohibited transactions or . . . an ongoing trafficking enterprise or conspiracy."

The defendant argues that because the indictment charging him with an offense under G. L. c. 94C, § 32E (*b*) (2), fails

to include an allegation of "continuity of action or organizational structure," the indictment is fatally defective. We reject that argument, and hold that the word "trafficks" simply characterizes the conduct prohibited by the statute, which is the knowing or intentional manufacture, distribution, dispensing or possession with intent to manufacture, distribute, dispense or bring into the Commonwealth specified amounts of cocaine or a mixture containing cocaine. The indictment is not defective.

Consistent with his argument that the indictment is fatally defective because of its failure to allege continuity of action or an organizational structure, the defendant advances a separate contention that as a matter of law he was entitled to a finding of not guilty of the trafficking offense, because a finding of continuity of action or an organizational structure was not warranted on the evidence. For the reasons stated above, that argument is without merit.

The defendant contends that he was denied his constitutional right to effective assistance of counsel due to his trial counsel's failure to provide the Commonwealth with notice of his proposed expert witnesses and by Mr. Chisholm's failure to obtain the judge's permission for Mr. Simon to participate in his defense. We disagree. The standard for determining whether a defendant has been deprived of the effective assistance of counsel is "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). We will not second guess "arguably reasoned tactical or strategic judgments of a lawyer." *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979). The defendant was not denied the effective assistance of counsel by counsel's failure to give timely notice to the Commonwealth of the defendant's intention to call expert witnesses. The defendant has not shown that, had proper notice been given, he would have had a substantial defense of which he was deprived. For all that appears, if proper notice had

been given, the Commonwealth would have produced whatever further proof the defense contends was necessary to prove chemically that the white powder seized from the defendant's bedroom was controlled cocaine. Furthermore, the judge found on adequate evidence that defense counsel's decision to conceal the existence of his expert witnesses was a calculated tactic. We cannot say that that was not an "arguably reasoned tactical or strategic judgment." *Id.* The tactic might well have succeeded were it not for the decisiveness of a seasoned judge.

We conclude also that the defendant was not denied effective assistance of counsel by Mr. Chisholm's failure to move for admission pro hac vice of out-of-State counsel, Mr. Simon. Mr. Simon was not barred from addressing the court until after he had cross-examined the Commonwealth's chemist and after the defendant's experts were precluded from testifying. Nothing further remained to be done on behalf of the defense except to record an offer of proof with respect to the expected testimony of the experts and to present appropriate motions and final argument. Nothing in the record suggests that Mr. Chisholm did not adequately perform those tasks.

The indictment for possession of cocaine with intent to distribute was placed on file. Ordinarily, we do not consider appeals from indictments placed on file, *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975), but in the interest of efficiency and in a suitable case we may choose to do so. See *Commonwealth* v. *Bianco*, 388 Mass. 358, 364-365 (1983). It is appropriate that we do so here. The parties agree that possession with intent to distribute is a lesser included offense of trafficking. We are affirming the trafficking conviction. The defendant cannot properly be sentenced for the lesser included offense. *Morey* v. *Commonwealth*, 108 Mass. 433, 434-435

(1871). Therefore, that indictment should be dismissed. *Commonwealth* v. *Jones*, 382 Mass. 387, 395 (1981).

> *Judgment on Indictment 83-1827 (trafficking) affirmed.*
> *Indictment 83-1828 (possession with intent to distribute) remanded to the Superior Court for the entry of an order of dismissal.*