COMMONWEALTH vs. ELIAS GIONTZIS.

No. 97-P-1340.

Norfolk. May 14, 1998. - July 29. 1999.

Present: JACOBS, FLANNERY, & BECK, JJ.[1]

*Witness,* Expert. *Evidence,* Expert opinion, Cross-examination, Rebuttal. *Practice, Criminal,* Discovery.

At the trial of a criminal case, no substantial risk of a miscarriage of justice arose from an asserted inappropriate line of questioning of the defendant's expert, where the strong evidence of guilt made it not plausible that the jury's verdict would have been different but for the asserted error. [455-456]

In a criminal case in which the Commonwealth violated a discovery order by its bad faith failure to disclose its expert rebuttal witness, the judge properly limited the scope of the expert's direct testimony, and error, if any, in the judge's failure to have excluded the witness's testimony in its entirety would not likely have had an effect on the jury's verdict, given the great weight of properly admitted evidence of the defendant's guilt. [456-463]

INDICTMENT found and returned in the Superior Court Department on February 2, 1995.

The case was tried before *Elizabeth Butler,* J.

*Mark W. Shea* for the defendant.

*Brian A. Wilson,* Assistant District Attorney, for the Commonwealth.

BECK, J. The defendant appeals from a conviction of misdemeanor motor vehicle homicide (reckless or negligent operation). G. L. c. 90, § 24G(*b*). He was acquitted of manslaughter and felony motor vehicle homicide. It is undisputed that the defendant agreed to race his newly purchased 1986 Buick Grand National against another young man and his Camaro as both were leaving a Halloween party at

---

[1]This case was argued before Justices Jacobs, Flannery, and Beck. Following the death of Justice Flannery, Justice Perretta was added to the panel and participated in this decision.

the Sons of Italy Club in the Roslindale area of Boston in 1994. The race took place on Washington Street between Roslindale and Dedham. The critical issue at trial, other than intoxication as to which the jury found the defendant not guilty, was speed. There was expert as well as lay testimony on this point. On appeal the defendant claims the trial judge erred in allowing improper cross-examination of his expert witness and in admitting the testimony of the Commonwealth's rebuttal expert witness.

*Evidence of speed.* The other driver, Kevin Smith, appeared as a witness for the Commonwealth pursuant to a memorandum of understanding. He testified that he was behind the defendant for the entire race, that they were going at speeds from fifty to sixty miles per hour, and up to sixty-five to eighty miles per hour. After slowing down to the speed limit, they accelerated again until both cars were going eighty-five miles per hour. Smith estimated the speed of the defendant's car at eighty-five to ninety miles per hour as it crossed the Dedham line shortly before the collision.

The defendant's passenger, Frank Scala, who was seriously injured in the crash, testified that the defendant was accelerating up to seventy miles per hour, and that at one point the speedometer was "pinned" at eighty-five. He further testified that the defendant took his foot off the gas when he discovered that he had gotten ahead of the other driver, then sped up again and accelerated from seventy to seventy-five and then eighty. Scala thought the defendant was going seventy when he collided with the victim's car as she was leaving a restaurant parking lot and turning onto Washington Street in Dedham. Eileen Lanza died three days later of head injuries she suffered in the collision.

Two other drivers traveling on Washington Street that night also testified. One testified that she had a digital speedometer and that she was going forty-three miles per hour at the time the cars passed her. She estimated the speed of the two cars, which were neck and neck as they "screeched by" her, at twice her speed. The other driver said he noticed the cars in his rear view mirror and tried to pull over to the right, but was unable to because there were cars parked along the side of Washington Street. He estimated his own speed at thirty-five miles per hour and said that the two cars passed him going "very fast."

The posted speed limit at the site of the collision is forty-five

miles per hour. Washington Street is a four lane divided roadway with businesses and residential housing along the road. The defendant's car came to rest on the opposite side of the road, facing back in the direction from which it had been coming, 300 feet from the point of impact. The Commonwealth's State police reconstruction expert testified that using various formulas he computed the defendant's speed at 105.62 miles per hour at impact.

The defendant testified that in the course of the race he accelerated to a speed of seventy miles per hour as he crossed West Boundary Road. He claimed he slowed to fifty miles per hour at the Dedham line. Shortly thereafter he collided with the victim's car, although he did not "know what exactly occurred."

The defendant's expert, Bradford Schofield, a consultant in accident reconstruction, stress analysis, and product design, with a bachelor's degree in mechanical engineering from the Massachusetts Institute of Technology, testified that he did not use the formulas the Commonwealth's State police expert had used, but instead relied upon "crush depth" to determine the speed at impact. In particular, he used a chart of crush depth in a textbook written by Rudolf Limpert. He testified that the crush depth on Lanza's car was less than a foot, and that her car was definitely struck from the side. On the basis of these observations and the chart, he estimated the defendant was going forty miles per hour at the time of impact. He acknowledged that forty miles per hour would be a high speed impact.

*Cross-examination of the defendant's expert.* On cross-examination, the Commonwealth explored Schofield's use of the chart in Limpert's book to estimate speed. Schofield acknowledged that Limpert is a well-known expert in the field. The prosecutor then asked Schofield whether a judge had ever refused to allow him to testify as an expert. Schofield responded, "Never." After further exchange on this point, the Commonwealth showed a document to the witness, who responded, "I know the case very well," although he denied that he had ever seen the document before.

The document the prosecutor showed Schofield, but apparently not defense counsel, was captioned "Statement of the Court" and was signed by a Superior Court judge nunc pro tunc in a wrongful death case with a 1984 Superior Court docket number. The document represented that "Schofield had spoliated, destroyed, or made unavailable evidence in the case; and

that the Court had determined that because of these actions by Mr. Schofield his testimony concerning such evidence should be excluded." In fact, the Supreme Judicial Court subsequently "vacate[d] the [Superior Court] order relative to Schofield's testimony," *Nally* v. *Volkswagen of America, Inc.*, 405 Mass. 191, 199 (1989), on the grounds that whether or not Schofield had actually altered or lost evidence "[were] factual questions which must be resolved." *Id.* at 198. The court remanded for "findings in accordance with [its] opinion," and said that "[t]he admissibility of Schofield's testimony [would] depend on those findings." *Id.* at 199. (The case ultimately settled.) At no point in the trial did the prosecutor disclose the subsequent history of the document or the *Nally* case.

After the prosecutor's initial question implicitly referring to the "Statement of the Court" from the *Nally* case, the further examination of Schofield proceeded as follows. The prosecutor continued to press the *Nally* case and the spoliation issue, including reading from the text of the document before it had been admitted. Defense counsel (who is not appellate counsel) persistently objected, claiming lack of notice (presumably of the document as well as the line of questioning). The judge consistently overruled the objection, explaining that the prosecutor "has no obligation to give . . . discovery as to impeachment materials." Schofield repeatedly denied that he had mishandled the evidence in the *Nally* case, explained that the "other side" had tried to discredit him, and countered the prosecutor's attempt to impeach him with the rejoinder: "You haven't mentioned the fact that that case went up on appeal and the matter was entirely changed subsequently." Although she had denied several earlier requests, the judge ultimately allowed the Commonwealth to introduce the Superior Court document into evidence. There was no further disclosure of, or discussion about, the appeal during the evidentiary part of the trial.

Schofield testified on Friday morning, October 4, 1996. The jury were sent out to deliberate before 3:05 P.M. that day and they deliberated for three hours before recessing for the weekend. On Monday, October 7, the jury deliberated all day. At 4:27 P.M. they reported that they had reached two verdicts but were unable to reach a verdict on the manslaughter indictment. They were sent home for the night. On the morning of Tuesday, October 6, the judge gave the jury a charge pursuant to *Commonwealth* v. *Rodriquez*, 364 Mass. 87 (1973), and sent

them out to continue their deliberations. After the jury left, the judge noted that she had "gotten some motions for instructions to the jury from [defense counsel]" and had received a copy of the *Nally* opinion. In urging the judge to give his requested supplemental jury instructions (which are not included in the record), trial counsel reported that he had located counsel in the *Nally* case on Sunday evening. He suggested that if the line of questioning had not been a surprise, there could have been a voir dire to resolve the issue. The judge refused to give the requested instruction because the jury had already returned verdicts on two of the three counts. She noted that defense counsel could have presented his motion on Monday morning. Trial counsel responded that the first time he knew the date of the *Nally* document was Monday morning when he asked the clerk to see the exhibit. He said he had spent the rest of Monday calling for advice from a lawyer because he "didn't know what to do with it." He also said "[he] didn't want another trial."

On appeal, the defendant argues that the prosecutor's cross-examination about the earlier case should have been excluded (1) because it concerned prior bad acts that were not relevant, citing *Commonwealth* v. *Gonzalez*, 11 Mass. App. Ct. 932 (1981); (2) because the Commonwealth did not challenge Schofield's qualifications; and (3) because the Supreme Judicial Court vacated the ruling concerning Schofield. Neither of the first two objections was presented to the trial judge. See *Commonwealth* v. *Cadwell*, 374 Mass. 308, 311-312 (1978). In any case, there is no merit to either of these arguments. If true, an expert's mishandling of evidence in another case would be relevant to the jury's assessment of his skill as an expert. See *Commonwealth* v. *DeMinico*, 408 Mass. 230, 235 (1990). The evidence did not go to the expert's qualifications. See Liacos, Massachusetts Evidence § 7.10.1, at 411 (6th ed. 1994).

As to the third objection, we agree with the trial judge that it was untimely. While we are sympathetic to the dilemma of trial counsel, by the time he made a request for relief the jury had already returned two sealed verdicts. There had been no earlier request for a continuance to seek further information about the *Nally* case, to obtain the appellate decision, or even to confer with Schofield. Nor, unfortunately, did the judge require the Commonwealth to provide further information about the *Nally* case, grant a continuance sua sponte, make an effort to obtain a copy of the appellate decision herself, or otherwise seek

clarification of the appropriateness of the Commonwealth's line of cross-examination. With Schofield available on Friday afternoon as the jury deliberated and the court still in session, defense counsel had opportunity at least to begin to formulate a strategy or conduct research, or both. Contact with prior counsel on Sunday night and a request for a copy of the document on Monday morning followed by telephone calls for advice was cutting it too close. Moreover, there were two jury questions on Friday and four on Monday. Trial counsel responded at side bar with requests and suggestions in the treatment of these questions, but he never told the judge of his continuing concern about evidence concerning the *Nally* case. Hence, we review the cross-examination of Schofield under the substantial risk of a miscarriage of justice standard. See *Commonwealth* v. *Tyree*, 387 Mass. 191, 213-214 (1982), cert. denied, 459 U.S. 1175 (1983); *Commonwealth* v. *Walker*, 421 Mass. 90, 97 (1995).

"Parties to litigation are entitled as a matter of right to the reasonable cross-examination of witnesses against them for the purpose of attempting to impeach or discredit their testimony." *Commonwealth* v. *Gagnon*, 408 Mass. 185, 192 (1990), quoting from *Commonwealth* v. *Underwood*, 358 Mass. 506, 513 (1970). "An expert witness is not immune from such examination," *Commonwealth* v. *Perkins*, 39 Mass. App. Ct. 577, 581 (1995), and the scope of cross-examination is within the sound discretion of the trial judge. *Commonwealth* v. *Gagnon*, 408 Mass. at 192. However, "[a] prosecutor may not conduct cross-examination 'in bad faith or without foundation.' " *Commonwealth* v. *Fordham*, 417 Mass. 10, 20-21 (1994) (citation omitted). The problem here, as the defendant belatedly discovered and belatedly pointed out to the trial judge, is that there was no foundation for the initial question whether a judge had ever refused to let Schofield testify, because the Supreme Judicial Court vacated the order purporting to do so. See Black's Law Dictionary 1548 (6th ed. 1990) ("vacate" defined as "[t]o annul; to set aside; to cancel or rescind"). The Commonwealth argues, and the judge appeared to believe, that Schofield's allegedly inaccurate response to the initial question whether a judge had ever refused to let him testify justified the continued attempt to impeach his credibility. But "[t]he [initial] question should not have been asked." *Commonwealth* v. *Fordham*, 417 Mass. at 21. Cf. *Commonwealth* v. *Baldwin*, 385 Mass. 165, 178 (1982) (no error in questioning defendant concerning

complaint later dismissed where complaint not introduced and judge instructed jury not to consider document). (We reject the Commonwealth's argument that the record is "barren of evidence" that the prosecutor knew about the appeal. Even if she did not know, which seems unlikely, she should have.)

Nevertheless, although the question is close, we conclude that the "inappropriate" line of questioning did not result in a substantial risk of a miscarriage of justice. *Commonwealth* v. *Fordham*, 417 Mass. at 21. In his testimony, Schofield explained the circumstances of the *Nally* case, including that the case "went up on appeal and nothing ever developed beyond that." Not only did the prosecutor not counter this testimony about the subsequent history of the *Nally* case, she did not mention the entire line of questioning in her closing argument. See *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. 945, 948 (1992). While it may be that, as trial counsel belatedly argued to the judge, Schofield was the defendant's "chief witness that [he was] relying on," and that "[w]ithout him there probably wouldn't have been a defense," given the testimony of the other witnesses, including the defendant, Schofield's estimate of speed was unlikely to have carried the day for the defendant. The evidence of "guilt was strong and one-sided." *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986). "[A]n inference that the result might have been otherwise but for the error" is not plausible. *Ibid.* Contrast *Commonwealth* v. *Martinez*, 34 Mass. App. Ct. 131, 133 (1993) (suggestion that defendant had obligation to come forward with evidence created substantial risk of miscarriage of justice where there was a "paucity of physical evidence of rape").

*The rebuttal witness.* At the conclusion of the defendant's case, the Commonwealth called Rudolph Limpert in rebuttal. The defendant promptly objected. The judge immediately overruled the objection. On appeal the defendant argues that the judge abused her discretion in allowing Limpert to testify.

The defendant timely filed a detailed three-page motion for discovery, including "the name, address, affiliation, and resume of any person who *may* give expert or accident reconstruction expert testimony on behalf of the Commonwealth" (emphasis added). The motion also requested information, inter alia, about prior testimony in the Commonwealth as an expert witness and identification of treatises and other technical material and

calculations to be presented at trial. The judge allowed the requests that are relevant here. Despite the fact that the defendant had apparently disclosed fully the content of Schofield's testimony to the Commonwealth, the Commonwealth did not provide Limpert's name in response to the defendant's motion. The subject of a rebuttal witness was mentioned during a scheduling conference at the end of the third day of trial, after the defendant had testified, but before Schofield, who was not yet available, had testified. In discussing the need to wait a day for Schofield, the prosecutor stated that "should [she] need a rebuttal witness, [she] may require additional time." The judge made clear there would be no extra time and remarked, "[a]ny rebuttal I would trust would go to the witnesses that you've already heard from." The prosecutor's enigmatic answer was, "Well, maybe Mr. Schofield would inspire me to have a rebuttal witness." The judge assumed such a rebuttal witness would be the trooper who had testified in the Commonwealth's case-in-chief.

In overruling the defendant's objection to Limpert's appearance, the judge admonished the Commonwealth that the scope of Limpert's testimony would be very narrow. She observed that "Limpert could have been called in the case in chief to give an opinion . . . . He's only being allowed to testify . . . in terms of his book and the use of those charts by the defense expert," and directed that Limpert could not give an opinion as to the cause of the accident (or presumably speed). Defense counsel, who claimed he had fully disclosed the content of Schofield's testimony to the Commonwealth, successfully requested that Schofield be allowed to stay in the court room to assist him with technical questions. He did not request a continuance.

Limpert, a consultant in motor vehicle and traffic safety with numerous academic degrees, including a Ph.D. from the University of Michigan, testified that the crush depth chart in his book should not have been used for accident reconstruction, that one cannot measure speed from crush depth, and that in any case the accident was not a side impact. On cross-examination, defense counsel questioned Limpert about accident reconstruction generally. At the end of the cross-examination, the prosecutor argued that defense counsel had "opened up things" and that she should be allowed to explore further. The judge agreed that there was merit to the prosecutor's

argument, but denied the request. The prosecutor then asked the following question in redirect: "In looking at these photos and in considering your background, does this look like a 40-mile-an-hour speed at crash?" The defendant immediately objected; the judge overruled the objection. Limpert testified that it "looks like more," and gave the reasons why. After further extended recross, the judge permitted the prosecutor to ask the long sought after opinion question about speed on impact. The defendant's objection at this point was again overruled, and Limpert said that his calculation showed that the defendant's car was going eighty-seven miles per hour.

The defendant argues on appeal that the trial judge abused her discretion in allowing Limpert to testify because the Commonwealth failed to disclose the possibility of his testimony pursuant to the defendant's motion for discovery of the Commonwealth's experts. He claims that the factors set out in *Commonwealth* v. *Chappee*, 397 Mass. 508, 517-518 (1986), required exclusion of Limpert's testimony. He also argues that even if Limpert's testimony, as limited by the judge, was permissible, Limpert's subsequent testimony that the defendant was going faster than forty miles per hour at impact should have been excluded. (Although he objected in vain at the time, on appeal the defendant does not challenge the admissibility of Limpert's opinion on the defendant's speed on impact.)

The threshold question is whether the Commonwealth was obligated to disclose to the defendant the possibility of Limpert's appearance as a rebuttal witness. The Massachusetts rule governing pretrial discovery in criminal matters, Mass.R.Crim.P. 14, 378 Mass. 874 (1979), makes no explicit reference to rebuttal evidence, except in the context of notice of an alibi defense, see Mass.R.Crim.P. 14(b)(1), and we have found no case discussing whether notice of a non-alibi rebuttal witness is required. Compare Fed.R.Crim.P. 16(a)(1)(E) ("Expert Witnesses. At the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under . . . the Federal Rules of Evidence during its case-in-chief at trial"). See *United States* v. *Marquez*, 686 F. Supp. 1354, 1358 (N.D. Ill. 1988) (rebuttal evidence not subject to pretrial disclosure).

The Massachusetts rules do provide for discretionary discovery. Mass.R.Crim.P. 14(a)(2). The discovery rule "is based on the concept of reciprocity and has as its aim full

pretrial disclosure of items normally within the range of discovery. . . . [T]he formal provisions of [the] rule are brought into effect . . . when discovery is initiated through a motion filed under this rule for court-ordered disclosure." Reporters' Notes to Mass.R.Crim.P. 14, Mass. Ann. Laws, Rules of Criminal Procedure 156 (Lexis 1999).

In this case, the defendant made a detailed motion for discovery regarding the Commonwealth's experts which the judge allowed insofar as relevant here. There is nothing on the record before us to suggest that the Commonwealth sought to limit discovery to its case-in-chief. Moreover, the defendant disclosed the content of Schofield's anticipated testimony to the Commonwealth. "Where the accused has made a request for evidence sufficiently specific to place the prosecution on notice as to what the defense desires, the evidence must be disclosed." *Commonwealth* v. *Soucy,* 17 Mass. App. Ct. 471, 472 (1984), quoting from *Commonwealth* v. *Wilson,* 381 Mass. 90, 108-109 & n.39 (1980). Such was the case here. The Commonwealth, therefore, was in violation of a discovery order. Mass.R.Crim.P. 14(c). See *Commonwealth* v. *Fossa,* 40 Mass. App. Ct. 563, 566 (1996).

Sanctions for noncompliance with discovery are within the judge's discretion. "[T]he judge may make a further order for discovery, grant a continuance, . . . enter such other order as [s]he deems just under the circumstances," Mass.R.Crim.P. 14(c)(1), or exclude evidence. Mass.R.Crim.P. 14(c)(2). These rules are "based on [the] assumption that the trial court is in the best situation to consider the opposing arguments concerning a failure to comply with a discovery order and to fashion an appropriate remedy." Reporters' Notes to Mass.R.Crim.P. 14(c). See *Commonwealth* v. *Lapka,* 13 Mass. App. Ct. 24, 31 (1982) ("[T]rial judges facing a situation of nondisclosure, whether culpable or not, possess a reasonably wide range of discretion to remedy any problem by tailoring relief to the particular circumstances of the case before them"). See also *Commonwealth* v. *Durning,* 406 Mass. 485, 495 (1990) (enforcement of pretrial conference report); *Commonwealth* v. *Delaney,* 11 Mass. App. Ct. 398, 403 (1981) (nondisclosure of alibi witness); *Commonwealth* v. *Fossa,* 40 Mass. App. Ct. at 567 (nondisclosure of percipient witness).

*Commonwealth* v. *Chappee,* 397 Mass. at 518, on which the defendant relies, sets out the factors a trial judge should consider

in determining whether to exclude a defense witness for violation of a discovery order. Although the issue here was the failure to exclude a Commonwealth witness and the judge appears not to have made the findings *Chappee* advises — indeed she appears not to have heard argument on the issue — the factors set out in *Chappee,* see *Commonwealth* v. *Durning,* 406 Mass. at 496; *Commonwealth* v. *Steinmeyer,* 43 Mass. 185, 190 (1997), provide appropriate guidance for resolving the issue before us. These factors are (1) the prevention of surprise; (2) the effectiveness of sanctions less severe than exclusion; (3) evidence of bad faith; (4) prejudice to the other party caused by the testimony; and (5) the materiality of the testimony to the outcome of the case. *Chappee,* 397 Mass. at 518. We review each of them in turn.

(1) That there was surprise, which the defendant's motion for discovery was intended to prevent, is clear, especially since Limpert appears to have been brought in from out of State. (The Commonwealth's argument that Limpert's appearance should not have been a surprise is disingenuous at best.)

(2) Limiting the scope of Limpert's testimony was an effective sanction which balanced the probative value of the evidence against the unfair surprise. See *Commonwealth* v. *Healy,* 393 Mass. 367, 381 (1984). Allowing the Commonwealth to use Limpert defensively, as to the use of the chart, but not offensively to give an opinion on causation or speed, reflected a reasonable balance between allowing relevant evidence to go to the jury and sanctioning violation of a discovery order. "[T]he judge, as the controller of the trial, has a nearly unreversible discretion to allow [rebuttal evidence]." *Commonwealth* v. *Guidry,* 22 Mass. App. Ct. 907, 909 (1986).

(3) The defendant claims he was prejudiced because "defense counsel was required to conduct cross-examination on a highly technical subject with no notice, and had no ability to have sur-rebuttal evidence available." This prejudice could have been mitigated by a request for a continuance. See *Commonwealth* v. *Healy,* 393 Mass. at 381. While the judge could have, and perhaps should have, granted a short continuance, sua sponte, to allow defense counsel to, for example, interview Limpert, see *Commonwealth* v. *Fossa,* 40 Mass. App. Ct. at 568, her failure to do so was not an abuse of discretion, see *Bucchiere* v. *New England Tel. & Tel. Co.,* 396 Mass. 639, 641 (1986), particularly since the defendant did not request such relief. See *Com-*

*monwealth* v. *Healy*, 393 Mass. at 381; *Wilson* v. *Honeywell, Inc.*, 28 Mass. App. Ct. 298, 301-304 (1990), *S.C.*, 409 Mass. 803, 809 (1991); *Elias* v. *Suran*, 35 Mass. App. Ct. 7, 10-11 (1993). Moreover, counsel did have the opportunity to consult Schofield during the conduct of his cross-examination. Our review of defense counsel's questions reveals that he conducted extended cross-examination, compare *Commonwealth* v. *Fossa*, 40 Mass. App. Ct. at 566, and showed familiarity with the subject matter. See *Commonwealth* v. *Durning*, 406 Mass. at 496-497. Nor did defense counsel request the opportunity to recall Schofield. The burden was on the defendant to "specify in what respects he could have done better or could have achieved a better result with foreknowledge [of Limpert's appearance]." *Commonwealth* v. *Fossa*, *supra*. On the requirement to show prejudice, see *Commonwealth* v. *Lapka*, 13 Mass. App. Ct. at 29; *Commonwealth* v. *Janvrin*, 44 Mass. App. Ct. 917, 919-920 (1998).

(4) It goes almost without saying that there is evidence of bad faith.

(5) Despite the surprise and the bad faith, however, we doubt that Limpert's rebuttal testimony was material to the outcome of the case. Limpert's testimony that the crush depth charts were not applicable in this case, if believed, did undermine Schofield's estimate of speed. But that estimate was already considerably lower than any of the lay witnesses, whose opinions as to speed are competent and admissible. See *Commonwealth* v. *Charland*, 338 Mass. 742, 744 (1959). See also Liacos, Massachusetts Evidence § 7.5, at 368-369 (6th ed. 1994). The five lay witnesses, including two of "the most persuasive sort of witnesses, 'neutral eyewitnesses with excellent opportunity to observe and no apparent bias or motive to palter or mislead,' " *Commonwealth* v. *Fossa*, 40 Mass. App. Ct. at 568, quoting from *Commonwealth* v. *Brookins*, 33 Mass. App. Ct. 626, 635 (1992), *S.C.*, 416 Mass. 97 (1993), and even the defendant to some extent, gave consistent testimony regarding the defendant's speed.

Nor is it likely that the question, "Does this look like a 40 mile per hour crash?," and the negative answer, had a material impact on the outcome of the case. The jury could hardly have expected that the Commonwealth would have called Limpert on rebuttal if he were going to agree with Schofield's opinion.

Although the judge also would have been well within her

discretion had she excluded the Commonwealth's rebuttal testimony, see *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. at 403 (exclusion appropriate remedy for intentional nondisclosure of alibi rebuttal witness), her decision to allow limited testimony was not an abuse of discretion. See *Commonwealth* v. *Steinmeyer*, 43 Mass. App. Ct. at 189 (exclusion of defendant's witness reversible error; alternative sanctions appropriate in most cases). Her decision was consistent with the preference for allowing "each party the freedom to present all relevant evidence at trial." Reporters' Notes to Mass.R.Crim.P. 14(c). "General considerations in favor of receiving evidence, likely to be both relevant and probative, could reasonably be taken into account by the judge." *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. at 405. See ABA Standards for Criminal Justice § 11-4.7 (2d ed. 1980). The commentary to that section says, at 11-67 to 11-68: "The exclusion sanction is not recommended because its results are capricious. Thus, exclusion of prosecution evidence may produce a disproportionate windfall for the defendant, while exclusion of defense evidence may lead to an unfair conviction. Either result would defeat the objectives of discovery."

*Conclusion.* The Commonwealth appears to have used tactics appropriately described as "trial by ambush," *Commonwealth* v. *Chappee*, 397 Mass. at 516, in contravention of the rules of criminal procedure and of fair play. See *Commonwealth* v. *Fossa*, 40 Mass. App. Ct. at 567 ("Such . . . glaring . . . foul[s] with respect to potentially critical evidence create[] the distinct risk of invalidating what might otherwise be a meritorious prosecution, inexcusably inconveniencing all concerned in the process"). However, we do not reverse a defendant's conviction merely because we disapprove of the conduct of the prosecution. There must be error, cumulative or not, which "prejudiced [the defendant] in [a] way that could have affected the outcome of the trial or created a substantial risk of a miscarriage of justice." *Id.* at 570. Cf. *Commonwealth* v. *Steinmeyer*, 43 Mass. App. Ct. at 191 (abuse of discretion to exclude testimony of critical defense witness where trial for sexual assault was a credibility contest between victim and defendant). Here, even had the judge excluded or struck the inappropriate cross-examination of Schofield and excluded Limpert's rebuttal testimony, "the great weight of the properly admitted evidence supported [the defendant's] guilt," *Commonwealth* v. *Delaney*,

11 Mass. App. Ct. at 405, including the defendant's own testimony. See *Commonwealth* v. *Hanger*, 377 Mass. 503, 511-512 (1979) (judge's error in failing to order reciprocal alibi discovery harmless where elderly victim made repeated identifications and vehicle involved was distinctive; "overwhelming evidence" of defendant's guilt). See also *Commonwealth* v. *Baldwin*, 385 Mass. 165, 176 (1982).

*Judgment affirmed.*