James F. BLAIKIE, Jr., Petitioner, Appellant,

v.

William CALLAHAN, etc., Respondent, Appellee.

No. 82–1361.

United States Court of Appeals, First Circuit.

Argued Sept. 17, 1982.
Decided Oct. 18, 1982.

Edward F. Harrington, with whom Sheridan, Garrahan & Lander, Framingham, Mass., and Daniel G. Harrington, Boston, Mass., were on brief, for petitioner, appellant.

Barbara A. H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for respondent, appellee.

Before DAVIS,* CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from the district court's denial of a petition for habeas corpus. The question raised is whether the sixth amendment afforded the petitioner the right to call expert witnesses to testify after he had already rested his case. We find that given the facts of this case the sixth amendment provided no such right.

The facts can be summarized briefly. Petitioner James F. Blaikie, Jr., was tried for the first degree murder of his friend, David DeWilde. At his trial Blaikie admitted shooting DeWilde at approximately 1:00 p. m. on January 14, 1975, but claimed to have done so in self-defense during a struggle over some money he owed DeWilde. Blaikie stated that shortly after the shooting, he covered DeWilde's head with a plastic bag and then dragged the body down to his basement. He claimed that only several hours later that evening, after his wife had gone to sleep, did he return to the basement and decide to bury DeWilde in a small dry well in the basement floor. He testified that he left the body in the well, covered only by some boards for about a week and then filled in the well with sand, coal, and cement.

On the final day of testimony the prosecutor asked Blaikie if he knew about rigor

* Of the Federal Circuit, sitting by designation.

mortis and was aware that it set in about 10 to 18 hours after death. Blaikie replied that he knew only a little about the subject and was unaware of when it occurred.

Following Blaikie's cross-examination, the defense rested its case. On rebuttal, the prosecution recalled Dr. Nolton H. Bigelow, the medical examiner who had conducted an autopsy on DeWilde. Dr. Bigelow testified, inter alia, that rigor mortis occurs "roughly two to four hours" after death and lasts for a period of 24 to 48 hours. He further stated that while rigor mortis lasts "It is very difficult to change the position of the arms, the legs or the torso of a body." Responding to a hypothetical question, Dr. Bigelow stated that "It would be extraordinarily difficult, virtually impossible" for the body to have been buried in the dry well after 9:00 p. m. because by that time rigor mortis would have set in and prevented the body from being bent over to fit into the well. Upon cross-examination, however, Dr. Bigelow admitted that the body could have been buried as Blaikie had testified if it had been folded over before rigor mortis had set in.

After the defense counsel cross-examined Dr. Bigelow, the prosecution reexamined him as to other matters and then rested. The defense then called Blaikie back to the stand. He testified for a very short time as to the position from which he shot DeWilde. Following his cross-examination, counsel for the defense announced that the defense rested. He did not indicate that he might wish to call any further witnesses. At this point the court adjourned for the afternoon, telling the jury that closing arguments and instructions would be given in the morning.

The next morning the defense immediately moved to reopen its case so that it could present two expert witnesses who would have testified that the onset of rigor mortis varies with a number of factors but can occur up to 24 hours after death and that even if rigor mortis had set in already, the body could have been buried in the well without much difficulty. The defense stated that the witnesses were in the courtroom and ready to testify. The testimony, the

defense asserted, would take no more than a half hour.

The trial court denied the defense motion without comment. Both parties then gave their closing arguments. In his argument, defense counsel reminded the jury that Dr. Bigelow had only stated that burial would be impossible if the body was flat when rigor mortis set in. Counsel asserted that there was no evidence as to the body's position prior to burial. The prosecutor then made her closing argument. She referred to Dr. Bigelow's testimony and argued that the body had been immediately buried after death, thus casting doubt on Blaikie's credibility and implying that the murder and burial had been planned in advance.

Blaikie was found guilty of first degree murder. In his appeal to the Massachusetts Supreme Judicial Court he argued that the trial court's refusal to permit him to reopen his case violated his sixth amendment right to present witnesses. The Supreme Judicial Court rejected that argument, finding that the constitutional right to call witnesses was not implicated because Blaikie had had his opportunity to present his version of the burial and because the experts he intended to call lacked personal knowledge of the facts of the case. *Commonwealth v. Blaikie,* 375 Mass. 601, 378 N.E.2d 1361 (1978).

Blaikie then filed a petition for habeas corpus in the federal district court. In denying the petition the court found that the excluded testimony was not relevant to the question of premeditation because there was no evidence that the body was flat before it was buried. In addition, the court noted that even if there were an error, it would have been harmless beyond a reasonable doubt because there was a substantial amount of other evidence establishing premeditation.

■ The sixth amendment unquestionably protects the basic right of criminal defendants to call witnesses on their own behalf. *Washington v. Texas,* 388 U.S. 14, 18, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019 (1967). The protection the amendment provides is not, however, unlimited. *United States v.*

*Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). The question before us is whether or not the court's refusal to allow Blaikie to reopen his case after he had rested constituted so great an infringement upon his right to call witnesses as to implicate the sixth amendment. We think not.

In describing the scope of the sixth amendment's protection, the Supreme Court has emphasized the defendant's right to be afforded reasonable opportunity to present his full case to the factfinder. In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, the Court stated,

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecutions' to the jury so it may decide where the truth lies.

*Id.* at 19, 87 S.Ct. at 1923. Accordingly, courts have found the sixth amendment implicated when state evidentiary rules prevented a defendant from presenting his view of the facts. In *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Supreme Court found a constitutional violation where the state's rules of evidence prevented the defendant from informing the jury that another man had confessed to the crime. Similarly, in *Pettijohn v. Hall,* 599 F.2d 476 (1st Cir.), *cert. denied,* 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 316 (1979), we found a sixth amendment violation where the trial court ruled that the defendant could not introduce evidence that an eyewitness had identified another man as the guilty party. *See also McMorris v. Israel,* 643 F.2d 458 (7th Cir. 1981) (unconditional prosecutorial veto over the introduction of an exculpatory polygraph examination violates the sixth amendment), *cert. denied,* 455 U.S. 967, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982).

In the present case, however, the state court allowed Blaikie full opportunity to present his case in chief[1] and also permitted him to offer surrebuttal evidence following Dr. Bigelow's rebuttal testimony concerning rigor mortis. Insofar as appears, Blaikie would have been allowed to present the excluded witnesses had he done so before resting. What the court refused to do was to permit a reopening of the trial after having been advised on the day before by the defense that it rested. The situation thus seems closer to that in *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141, where the defense's failure to follow certain rules resulted in the rejection of its evidence, than to the cases where the presentation of material defense evidence was forbidden outright. *But cf. Alicea v. Gagnon,* 675 F.2d 913 (7th Cir. 1982) (alibi notice rule violates the sixth amendment); *Ronson v. Commissioner of Corrections,* 604 F.2d 176 (2d Cir. 1979) (sixth amendment violation to bar the defendant from introducing evidence of insanity merely because of technical violation of notice requirement).

For a court's refusal to reopen and receive new evidence after the parties have rested to constitute a sixth amendment violation we think greater prejudice must be shown than in refusals to receive evidence offered in the regular course of a trial. *Compare Pettijohn v. Hall,* 599 F.2d at 480. The state has a strong interest in maintaining a stable, predictable trial format with a definite end as well as a beginning. This discourages jockeying for position by the parties and makes it possible to run a workable calendar. Judges, for example, upon being told by counsel that the evidence has closed, may schedule other matters to begin after arguments and charge on the following day. If defense counsel is free to insist upon reopening at any time, inconvenience may be caused not only to the court but to other litigants and witnesses awaiting their turn.[2] As is true, therefore, in the case of

---

1. The trial court did deny a defense request to call the prosecutor as a witness. The Supreme Judicial Court affirmed this ruling, *Commonwealth v. Blaikie,* 375 Mass. at 608–10, 378 N.E.2d 1361. The issue was not raised before the district court and is not before us now.

2. The defense represented here that its witnesses would take only half an hour. Predictions of

motions for a new trial, *Subilosky v. Callahan,* 689 F.2d 7 (1st Cir. 1982); *Sawyer v. Mullaney,* 510 F.2d 1220, 1221 (1st Cir. 1975), a trial judge must be allowed a fair degree of discretion in ruling upon motions to reopen the defense. And for his adverse ruling to violate the sixth amendment, it must be shown that the proffered evidence was of such importance to the achievement of a just result that the need for admitting it overrides the presumption favoring enforcement of the state's usual trial procedures. *Cf. United States v. Fogelman,* 586 F.2d 337 (5th Cir. 1978) (defendant's right to address sentencing court can be limited to reasonable length of time); *United States v. Taylor,* 562 F.2d 1345, 1362 (2d Cir.), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977), and cases cited therein.[3]

■ Judged by this standard, we do not find that Blaikie's sixth amendment rights were violated. He was provided with a full opportunity to present his direct case during which he testified at length concerning his version of the killing and burial. He was permitted to offer additional evidence after Dr. Bigelow testified on rebuttal. Blaikie, to be sure, may not have been able to anticipate completely the nature of Dr. Bigelow's rebuttal testimony, but he should not have been totally surprised, having been earlier cross-examined himself about rigor mortis.[4] While this occurred on the same day that Dr. Bigelow was later to testify on rebuttal, the cross-examination occurred prior to the lunch recess and several hours before Dr. Bigelow testified, leaving the

defense some time to consider the issue. Moreover, after Dr. Bigelow had been recalled and had testified as to rigor mortis, defense counsel could have sought leave to investigate and, if necessary, to call witnesses the following morning. It did not do so, leaving the court and the prosecution with the impression that the presentation of evidence had ended.

■ Of even greater significance, we do not find the rigor mortis issue to have been as crucial to the case as the petitioner would urge us to believe. It is true that the prosecutor adverted to the issue, among others, to imply that the killing was premeditated. Nevertheless, the probative value of the inferences the prosecutor sought to draw was tenuous at best. The Supreme Judicial Court noted that a defendant's conduct after the killing "is rarely relevant to the issue of premeditation." 375 Mass. at 605, 378 N.E.2d at 1364. Evidence that the body was buried a short time after the killing is hardly powerful support for the proposition that the killing was planned in advance. And as both the Supreme Judicial Court and the district court noted, there was far more probative evidence of premeditation in this case, including evidence that Blaikie had a motive for killing DeWilde, lured DeWilde to Blaikie's house, and killed DeWilde with a single shot to the head.

To be sure, Dr. Bigelow's testimony may have discredited the defendant. To the extent that Dr. Bigelow's testimony indicated that it would have been impossible to bury the body when the defendant claimed to have buried it, questions may have been

---

this sort are, however, often unreliable. Moreover, after the witnesses testified, the prosecution might have claimed surprise, and sought to rehabilitate Dr. Bigelow's testimony securing expert support for his version. We note that Dr. Bigelow's testimony has support in at least one medical text. 2 *Forensic Sciences* § 25.03 (C. Wecht ed. 1981).

**3.** Because the core concerns of the sixth amendment are not at stake in this case, and we are considering whether or not to apply the amendment in what can only be considered a special circumstance, we face a situation similar to one posed when a petitioner raises a claim of a violation of due process not falling

under any specific provision of the Bill of Rights. In such cases a federal habeas court can only give relief where what occurred was not merely an error but an action that was egregious and fundamentally unfair. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

**4.** While the prosecutor's questions did not allude to Dr. Bigelow's views on the subject, and indeed the prosecutor implied that rigor mortis sets in up to 18 hours after death, the questioning might nevertheless have alerted counsel that rigor mortis would become an issue in the case.

raised in the jurors' minds about Blaikie's credibility. Nevertheless, even in this respect, we do not find that the rigor mortis question was of commanding significance. During his direct examination Dr. Bigelow testified to many factors that contradicted Blaikie's testimony. For example, Dr. Bigelow stated that the defendant could not have fired the gun from the position he claimed to have been in when the gun went off. Dr. Bigelow further stated that the body could not have remained in the dry well for a week prior to having been covered with cement as Blaikie asserted because the odor of the decaying body would have overwhelmed the entire house and alerted Blaikie's wife to the corpse's being in the basement. Moreover, even as to the rigor mortis issue itself, Dr. Bigelow's testimony did not unequivocally contradict Blaikie's version of the burial. Dr. Bigelow admitted upon cross-examination that the body could have been buried as Blaikie contended so long as it had been folded prior to the onset of rigor mortis. As the defense itself stressed to the jury, there simply was no clear evidence as to what position the body was in prior to burial.

We conclude that the state judge's refusal to allow the defense to reopen was not so capricious as to violate the defendant's sixth amendment rights. Even assuming what may or may not be so—that the defense's request would not have necessitated a great delay in the trial—the question is not whether some other judge might have been more flexible than the judge who handled the case but rather whether his ruling was so arbitrary as to violate the fundamental protections contained in the sixth amendment to the federal Constitution. Here defendant was afforded his plenary rights to present a defense, and the refusal to reopen did not manifest such fundamental unfairness as would implicate the sixth amendment.

*Affirmed.*